| | |
|---|---|
| CERTAIN UNDERWRITERS AT LLOYD'S, LONDON subscribing to POLICY NOS. TCNR001338, TCNR005665 and TCNR012269, | ) ) ) ) ) |
| Plaintiffs, v. | ) ) ) |
| STOCK BUILDING SUPPLY, LLC, | ) ) ) |
| Defendant and Counterclaimant. | ) ) |
| STOCK BUILDING SUPPLY, LLC, | ) ) |
| Defendant and Third-Party Plaintiff, | ) ) |
| v. | ) ) |
| WOOMER INSURANCE GROUP, INC., | ) ) |
| Third-Party Defendant. | ) ) |

Right column:

**STOCK BUILDING SUPPLY, LLC'S RESPONSE TO THIRD-PARTY DEFENDANT WOOMER INSURANCE GROUP, INC.'S MOTION FOR SUMMARY JUDGMENT**

Fed. R. Civ. P. 56;
Local Civil Rule 7.1(f)

Defendant, Counterclaimant, and Third-Party Plaintiff Stock Building Supply, LLC n/k/a BMC East, LLC ("Stock"), by and through its undersigned counsel, hereby responds in opposition to the Motion for Summary Judgment (D.E. 122) filed by Third-Party Defendant Woomer Insurance Group, Inc. ("Woomer").

## NATURE OF THE CASE

This case concerns the existence and extent of insurance coverage available to Stock with respect to its defense of an underlying action brought by Weaver Cooke Construction, LLC stemming from the construction of the SkySail Luxury Condominiums ("Project") in New Bern, North Carolina ("Underlying Action").

C.N.N.C. and its principal, Carlos O. Garcia (collectively "Garcia"), a subcontractor on the Project, entered into an agreement with Stock for the installation of windows and doors at the Project.[1] That contract obligated Garcia to procure "Comprehensive General Liability Insurance" for Stock's benefit, including "contractual liability and completed operations liability" coverage.

Garcia procured through Woomer three policies from Certain Underwriters at Lloyd's, London ("Underwriters") with policy periods between January 26, 2007 and May 14, 2010 ("2007 Policy," "2008 Policy," and "2009 Policy" but collectively "Policies"). Woomer provided Garcia with certificates of insurance identifying Stock as an additional insured under the Policies, including both "completed operations" and "ongoing operations" coverage. Upon being sued in the Underlying Action, Stock duly demanded that Underwriters defend and indemnify Stock as an additional insured under the Policies. Underwriters denied owing any coverage obligation to Stock, primarily on the grounds that Stock was not an additional insured under the 2007 Policy and although insured under the 2008 and 2009 Policies, they did not extend "completed operations" coverage to Stock.

There are a multitude of fact issues which, at a minimum, mandate denial of Woomer's motion. Among them and discussed in detail herein: (1) Woomer admits to representing and believing that it procured Stock's additional insured coverage in the 2007 Policy and that its subsequently-discovered failure to do so was "human error" and a breach of its own "protocol"; (2) The certificates of insurance for the 2008 and 2009 Policies specifically provide that Stock had completed operations coverage; (3) Woomer denies ever seeing Garcia's contract with Stock

---

[1] Garcia was initially a named defendant in this action. (D.E. 1, 1-15, 1-16.) However, he was deported out of the United States and subsequently discontinued from this action by Underwriters. (D.E. 72, 75.)

or requesting a copy despite the fact that the insurance requirements in that contract are found, verbatim, in the Woomer certificates of insurance; (4) negligence actions generally and Stock's negligence claim against Woomer here virtually always presents fact issues; (5) Woomer's assertions about the proximate cause of Stock's loss and statements that Woomer did not "breach any duty" raise more questions than they resolve; and (6) Woomer's statute of limitations arguments are legally and factually false.

This Court also previously articulated various fact issues, most recently in its August 11, 2020 Order wherein this Court noted: "Underwriters argues the claim fails because the Certificates were not issued by Underwriters but rather by Woomer. However, as Stock alleges Woomer acted as Underwriter's agent in the issuance, this argument fails at this stage of the litigation." (D.E. 117 at 10.) The facts surrounding Woomer's issuance of the three certificates of insurance and the admitted mistakes it made in doing so mandate denial of its motion.

## STATEMENT OF FACTS

### A. Woomer Promises To Procure Comprehensive Coverage For Its Clients But Actually Outsources That Work To Its Third-Party "Expert."

Woomer testified, consistent with its public representations, that it has "the leverage and commitment to search the marketplace for the most . . . comprehensive coverage available." SOF, Ex. A at 34:17-35:4.[2] Woomer has "direct contracts with certain carriers" but uses third party brokers such as "Tapco" to procure coverage from other insurers (apparently without informing their customers that they are doing so). *Id.* at 36:25-37:23. Woomer does not have a direct contract with Underwriters. *Id.* at 38:2-4.

When Garcia looked to Woomer to place the coverage that he was contractually obligated to purchase under his contract with Stock, it is "highly unlikely" that Woomer even attempted to

---

[2] "SOF" refers to Stock's Local Civil Rule 56.1 statement of material facts.

3

contact any insurers before contacting Tapco. *Id*. at 38:5-8. This is because, despite claiming to have the commitment and capability to procure coverage, Tapco is, in fact, the "expert" on which Woomer "relies." *Id*. at 41:10-14. So much so that Woomer did not request quotes for Garcia's coverage from any insurer other than Underwriters. *Id*. at 40:10-41:18.

### B. Woomer Promises To Secure Its Contractually Obligated Coverage For Stock.

Under its contract with Stock, Garcia was contractually obligated to procure:

> Comprehensive General Liability Insurance . . . show[ing] 'Stock Building Supply Holdings, Inc. Its Affiliated and Subsidiary Companies, Officers, Directors, Agents and Employees are Additional Insureds as their interest may appear' in the description field. This policy will include contractual liability and completed operations liability[.]

SOF, Ex. B (emphasis in original). The need to purchase both contractual liability and completed operations coverage in the construction context is "standard." SOF, Ex. A at 65:18-66:7. More specifically, Woomer secures additional insured coverage for Stock "dozens" of times per year and this is "typically the verbiage." *Id*. at 62:21-63:11.

This may be the reason why Woomer denies ever being provided with a copy of Garcia's contract (*id.* at 60:2-5), testifying that it does "not require to see it" and "more than likely" did not see it or ask for it. *Id*. at 70:10-14, 88:22-89:4. Regardless of whether Woomer should have or actually requested and reviewed that contract, the insurance requirement language in the contract that Woomer purportedly did not see is identical to the certificate of insurance that Woomer drafted and provided to Garcia in connection with the 2007 Policy. SOF, Ex. C. Even Woomer agrees that, had it looked at the contract (or acted in accordance with what it admits is both industry and Stock standards), it would have quickly realized that Garcia "was obligated to procure contractual liability and completed operations coverage for Stock." SOF, Ex. A at 70:15-19.

4

### C. Woomer Admittedly Failed To Procure Stock's Coverage Under the 2007 Policy.

The fact that Woomer neglected to review the contract detailing the type of coverage Garcia was required to purchase was only bested by Woomer's next error. Woomer issued a certificate of insurance for the 2007 Policy confirming that Woomer intended to include "completed operations" coverage as per the contract. SOF, Ex. C. Woomer believed that it had actually procured that coverage for Stock in the 2007 Policy. SOF, Ex. A at 65:8-17.

Woomer did not actually procure that coverage, however, because Woomer "issued the certificate and it failed to notify Tapco that Stock [] needed to be added to the policy." *Id*. at 49:14-16.[3] *See also* 65:8-17 (Stock did not have the coverage "because of that mistake"). Thus, according to Woomer, Stock effectively had no coverage under the 2007 Policy despite Garcia paying for that coverage and Woomer believing it had procured that coverage. *Id*. at 61:19-24.

This failure admittedly occurred notwithstanding its own "protocol" "to make sure that when a policy is received from the insurance company it's what it's supposed to be, it's correct" because "customers don't like surprises." *Id*. at 78:15-80:15. Yet, to this day, Woomer is "not sure" why that protocol was not followed upon its receipt of the 2007 Policy. *Id*. Woomer's only explanation: "Human error." *Id*. at 81:6-10. Woomer still does not know to this day whether anyone discovered its errors prior to receiving service of the complaint in this action. *Id*. at 74:5-11.

### D. Woomer's Wrongful Conduct Continues Through Procurement Of The 2008 And 2009 Policies.

Woomer corrected one of its many errors when it successfully included Stock as an additional insured on the 2008 and 2009 Policies. SOF, Ex. D. However, Woomer would again

---

[3] Woomer again described this failure as its "human error" and a breaking of its own "protocol." *Id*. at 50:19-21, 51:1-6.

make significant errors. The certificates of insurance issued by Woomer for these policies reflect Stock's additional insured status and that the policies provide completed operations coverage redounding to Stock's benefit. *Id.* Yet, the endorsements appended to those policies allegedly exclude from coverage, only with respect to additional insureds, property damage after "operations [have] been completed." SOF, Ex. E.

A form endorsement providing the correct additional insured coverage including completed operations coverage is readily available. SOF, Ex. A at 98:19-100:3; Ex. F. According to Woomer, an insured simply needs to "ask for it" or show Woomer the contract obligating the insured to procure that coverage. *Id*. Despite lacking any personal knowledge regarding Garcia or his account, Woomer testified that Garcia did not provide a copy of the contract and did not "ask for" completed operations coverage for Stock's benefit. *Id*. at 100:10-23. As established above, that assertion is belied by the facts.

## **RELEVANT LEGAL STANDARD**

Under Fed. R. Civ. P. 56, "[s]ummary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Lorenzo v. Prime Commc'ns, L.P.*, No. 5:12-CV-69-H-KS, 2018 WL 2296341, at *1 (E.D.N.C. Mar. 29, 2018). The proponent's evidence must be "so onesided that one party must prevail as a matter of law." *Hanover Ins. Co. v. Blue Ridge Prop. Mgmt., LLC*, 1:18CV1018, 2020 WL 5764369, at *2 (M.D.N.C. Sept. 28, 2020) (citation omitted).

"The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact." *Lorenzo*, 2018 WL 2296341, at *1 (citation omitted); *see also Thompson v. Hartsfield*, No. 5:17-CT-3262-FL, 2020 WL 5709247, at * 3 (E.D.N.C. Sept. 24, 2020) (movant must carry its burden of "informing the district court of the

basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of" a fact issue (citation omitted)). Then, and only then, does the burden shift to the nonmovant to "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Lorenzo*, 2018 WL 2296341, at *1 (citations omitted). In determining whether a fact issue exists, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Id.* (citation omitted).

## ARGUMENT

### I. WOOMER'S MOTION SHOULD BE DENIED AS PROCEDURALLY DEFECTIVE.

In addition to its evidentiary burden discussed above, Woomer was obligated to comply with Local Civil Rule 56.1(a) which mandates that, "[a]ny motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 shall be supported by a separate statement . . . of the material facts as to which the moving party contends there is no genuine dispute." The only exception is where a party believes that compliance is "exceptionally burdensome or is otherwise inappropriate" and requests an exemption from this requirement in a Rule 26(f) report. *See* Local Civil Rule 56.1(b).

Woomer brought this motion pursuant to Fed. R. Civ. P. 56. However, Woomer failed to file the mandated statement of undisputed material facts and did not make a request for an exemption from this requirement. Had Woomer filed that statement and Stock failed to respond "by citing to particular parts of the record" this Court would have deemed each of Woomer's material facts admitted. *Major v. Cape Fear Acad.*, No. 7:19-CV-11-D, 2020 WL 3513243, at *1 n.2 (E.D.N.C. June 26, 2020). Thus, Woomer failed to carry its burden of establishing

entitlement to summary judgment by failing to file this required statement.[4]  On this independent

ground, Woomer's motion should be denied.

## II. WOOMER'S MOTION SHOULD BE DENIED ON THE MERITS.

It is well settled that claims involving negligence and/or contributory negligence are

"rarely appropriate for summary judgment." *Wood v. McDonald's Corp.*, 166 N.C. App. 48, 54,

603 S.E.2d 539, 544 (2004) (citations omitted).  This case, which Woomer concedes stems from

its own "human error"—is no exception.  As discussed below, Woomer enumerates some of the

many fact issues surrounding Underwriters' duty to defend under the Policies.  Woomer's

admittedly tortious conduct mandates a jury considering the extent to which liability should be

imposed upon it for its admitted failures to procure the coverage requested by Garcia and which

Woomer intended to procure on his behalf.

### A. Woomer Fails to Eliminate Any Fact Issues Regarding Causation.

Without providing any evidentiary support, Woomer proclaims that it "did not

proximately cause Stock's damages."  (D.E. 123 at 6–7.)  It also fails to cite any legal support

because issues of proximate causation almost exclusively involve disputed facts:

> Only when the facts are all admitted and only one inference may
> be drawn from them will the court declare whether an act was the
> proximate cause of an injury or not.  [B]ecause that is rarely the
> case, what is the proximate cause of an injury is ordinarily a
> question for the jury.

*Small v. WellDyne, Inc.*, 927 F.3d 169, 175 (4th Cir. 2019) (citing *Adams v. Mills*, 312 N.C. 181,

---

[4] Courts only consider excusing this procedural deficiency where the movant "file[s] all the evidence that it relies on . . . and include[s] a detailed statement of facts in its memorandum of law . . . with record citations" and "immediately sought to remedy" the failure once it "realized its oversight."  *Benson v. Vaughn Indus. LLC*, 450 F. Supp. 3d 655, 660 n.1 (E.D.N.C. 2020). Here, Woomer never sought to remedy its failure or even acknowledge an "oversight." Moreover, as discussed herein, Woomer's memorandum of law fails to include any fact statement (let alone a detailed fact statement with record citations), and Woomer attaches no documentary evidence to its motion whatsoever.

193, 322 S.E.2d 164, 172 (1984); *see also Holt v. N.C. Dept. of Transp.*, 245 N.C. App. 167, 181, 781 S.E.2d 697, 706 (2016) (*quoting Gaines ex rel. Hancox v. Cumberland Cty. Hosp. Sys., Inc.*, 203 N.C. App. 213, 219, 692 S.E.2d 119, 122 (2010) ("[I]t is only in exceptional cases, in which reasonable minds cannot differ as to foreseeability of injury, that a court should decide proximate cause as a matter of law. Proximate cause is ordinarily a question of fact for the jury, to be solved by the exercise of good common sense in the consideration of the evidence of each particular case.")).

In *Liverman Metal Recycling, Inc. v. Arthur J. Gallagher & Co.*, No. 4:16-CV-291-BO, 2018 WL 2407369 (E.D.N.C. May 25, 2018), the plaintiff filed suit against its insurance broker on the grounds that the broker's actions caused their insurance company to wrongly disclaim coverage. The plaintiff sought to recover attorneys' fees stemming from the dispute it had with the insurance company and alleged negligent failure to procure workmen's compensation insurance; negligent failure to advise plaintiffs of the need to procure workmen's compensation insurance; fraud; constructive fraud; and a violation of North Carolina's Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75–1.1(a). *Id*. at *1. The broker moved for summary judgment on the grounds that there was no proximate cause between their alleged actions and the insurance company's denial; that they were not negligent; and that there was no detrimental reliance; and that there was no detrimental reliance to support a fraud claim. *Id*. at *2. The Court denied summary judgment, finding genuine issues of material fact still left to be resolved:

> The acquisition process between plaintiffs was lengthy and involved several steps. Whether, in that context, the above discussions constituted an affirmative representation that the requested insurance had been procured has not been firmly established in any party's favor at this juncture.

*Id*. at *2; *see also Barnett v. Sec. Ins. Co. of Hartford*, 84 N.C. App. 376, 379, 352 S.E.2d 855,

857 (1987) (reversing judgment for defendant broker notwithstanding the verdict and remanding entry of judgment in accordance with the jury verdict which found that broker negligently failed to renew policyholder's policy and that as a proximate result, the plaintiff was damaged).

As set forth above, this case is replete with disputed facts and Woomer admits that there are multiple inferences that can be drawn from those facts. Specifically, Woomer acknowledges that it is potentially liable if "it improperly issued [a] certificate of insurance for the 2007 Policy." (D.E. 123 at 6–7.) That is not a fact issue because Woomer repeatedly admits that it failed to do so. Woomer certainly is not entitled to summary judgment on this record.

Next, Woomer contends that Underwriters may have a duty to defend in which case Woomer's negligent conduct would be rendered academic. *Id.* This argument ignores the fact that Underwriters moved for summary judgment declaring that it has no such defense obligation on, among other grounds, that Stock is not an additional insured under the 2007 Policy and does not have ongoing operations coverage under the 2008 or 2009 Policies. (D.E. 125.)

Assuming Woomer is even theoretically correct about Underwriters' defense obligation, Woomer would not be entitled to summary judgment unless and until it is adjudicated that Underwriters has a duty to defend Stock. This too has not occurred. Finally, Woomer considers the "possibility that it was work performed during the . . . 2008 Policy period that caused some or all of the damages alleged in the Underlying Lawsuit," in which case "Underwriters would, as a matter of law, owe a duty to defend Stock[.]" (D.E. 123 at 8.) To coin Woomer's phrase "either Underwriters or Stock is correct." *Id.* at 7. That does not mean, however, that Woomer is not liable as a matter of law under any of these scenarios.

Moreover, the arguments advanced by Woomer are belied by the facts. First, Woomer claims that Underwriters would have denied defense coverage to Stock "regardless of whether

10
Case 5:14-cv-00367-BO-RJ   Document 128   Filed 10/26/20   Page 10 of 18

Stock was an additional insured." (D.E. 123 at 7.) That is known not to be the case as Underwriters now moves for summary judgment on the ground that it has no defense duty under the 2007 Policy *because* Stock is not an insured. (D.E. 125 at 9–10.) Stock is not an insured under the 2007 Policy due solely and exclusively to Woomer's admitted "human error." Woomer alternatively argues that if Underwriters has a defense obligation, then Woomer has not caused any damages. That argument fails for the same reason because, as noted, Underwriters presently seeks a declaration that it has no defense obligation to Stock as a matter of law under the policies procured by Woomer.

Woomer may be liable, in whole or in part, under either scenario but is certainly liable should this Court grant Underwriters' motion. Thus, Woomer's motion should be denied.

### B. Woomer's Statute Of Limitations Argument Is Unavailing.

"The statute of limitations is an affirmative defense that must be proven by a defendant by a preponderance of the evidence." *Topshelf Mgmt., Inc. v. Campbell-Ewald Co.*, 203 F. Supp. 3d 608, 614 (M.D.N.C. 2016). Contrary to Woomer's assertions, the law-of-the-case doctrine does not apply. This Court has not adjudicated when the statute of limitations on any of Stock's claims against Woomer began to run. The law confirms that Stock's claims against Woomer do not begin to accrue until (1) Stock discovers Woomer's error and (2) Stock suffers harm as a result. Under this law, the claims are timely—or, at a minimum, subject to genuine issues of material fact concerning when they accrued. Woomer's arguments concerning the statute of limitations legally and factually fail.

### 1. Woomer's invocation of the "law of the case" doctrine is misplaced.

Stock filed an Amended Third Party Complaint against Woomer in August 2014. (D.E. 16.) Therein, Stock asserted claims against Woomer sounding in Negligent Misrepresentation,

Unfair and Deceptive Trade Practices and Negligence. *Id.* Woomer interposed an Answer in October 2014 in which it generally denied the allegations. (D.E. 25.) Woomer now broadly and incorrectly argues that "all three of Stock's third party claims are barred by the statute of limitations." (D.E. 123 at 6.)

First, Woomer is wrong on the law. As reaffirmed in the case law on which it relies, the "law of the case" doctrine applies "when a court decides upon a rule of law." (D.E. 123 at 8–9 (citing *Columbus-Am. Discovery Grp. v. Atl. Mut. Ins. Co.*, 203 F.3d 291, 304 (4th Cir. 2000).) No rule of law has been litigated and decided regarding the applicable statute(s) of limitation governing Stock's claims against Woomer nor when those statute(s) of limitation accrued or potentially tolled as they relate to Woomer. An order regarding the timeliness of a cause of action against one party is not "law of the case" regarding the timeliness of a different cause of action against a different party.[5]

Second, Woomer is wrong on the facts. It first claims that this Court "already ruled that the statute of limitations for Stock's claims against Underwriters arising from the issuance of the certificates of insurance . . . accrued at the time of the issuance of the policies." (D.E. 123 at 8.) This Court made no such pronouncement. Quite to the contrary, this Court held that "the parties disagree on when the [UDTPA] claim accrued" but did not resolve that issue, instead holding that Stock "has not alleged fraud" against Underwriters. (D.E. 117 at 10–11.) Thus, this Court did not "rule" on any statute of limitations issue, much less on whether any claim against Woomer was time barred. Woomer's invocation of the "law of the case" doctrine therefore fails.

---

[5] Nor does *United States v. Duke Energy Corp.*, No. 1:00CV1262, 2015 WL 13810319, at *1 (M.D.N.C. Apr. 7, 2015) advance Woomer's cause. (D.E. 123 at 9.) That case involved the limited issue of whether the failure to obtain a permit was a one-time or continuing violation of the Clean Air Act for purposes of the statute of limitations and the court noted the "differences in opinion" on that issue between the Middle District of North Carolina and "several Courts of Appeals (not the Fourth Circuit)" over that issue.

12
Case 5:14-cv-00367-BO-RJ   Document 128   Filed 10/26/20   Page 12 of 18

### 2. Woomer's motion fails to consider when each of the causes of action accrued.

Woomer is correct that negligence and negligent misrepresentation causes of action are subject to a three-year statute of limitations. Woomer then contends, however, that both causes of action accrued upon the issuance of the certificates of insurance which is more than three years prior to commencement of this action. (D.E. 123 at 9.) Once again, Woomer is plainly incorrect.

The three-year statute of limitations on a negligence cause of action "does not accrue until two events occur: first, the claimant suffers harm because of the misrepresentation, and second, the claimant discovers the misrepresentation." *Topshelf*, 203 F. Supp. 3d at 614 (citation omitted).

In *Barger v. McCoy Hillard & Parks*, 122 N.C. App. 391, 469 S.E.2d 593, *aff'd,* 346 N.C. 650, 488 S.E.2d 215 (1997), the Court of Appeals of North Carolina reversed the trial court's entry of summary judgment for an accounting firm, finding that the statute of limitations for a negligent misrepresentation claim was time barred. The court found that there was an issue of fact as to when the claim accrued. *See also Hunter v. Guardian Life Ins. Co. of Am.*, 162 N.C. App. 477, 486, 593 S.E.2d 595, 601 (2004) ("[D]etermining '[w]hen plaintiff should, in the exercise of reasonable care and due diligence, have discovered the [alleged] fraud is a question of fact to be resolved by the jury.'" (citation omitted)).

In *Spears v. Moore*, 145 N.C. App. 706, 551 S.E.2d 483 (2001), a landowner sued their real estate broker for several causes of action including fraud and misrepresentation and negligent misrepresentation. The trial court granted summary judgment to the real estate broker on the grounds that the claims were timed barred, but the appellate court reversed, noting:

> For a claim based on fraud or mistake, "the cause of action shall not be deemed to have accrued until the discovery by the aggrieved

> party of the facts constituting the fraud or mistake." N.C. Gen. Stat. § 1–52(9) (1999). "Discovery" is defined as actual discovery or the time when the fraud should have been discovered in the exercise of due diligence. *See Hyde v. Taylor,* 70 N.C. App. 523, 528, 320 S.E.2d 904, 908 (1984). A suit must then be initiated within three years of such discovery in order to comply with the statute of limitations. *See* N.C. Gen. Stat. § 1–52 (1999). **Whether a plaintiff has exercised due diligence is ordinarily an issue of fact for the jury absent dispositive or conclusive evidence indicating neglect by the plaintiff as a matter of law.** *See Huss* [v. *Huss,* 31 N.C. App. 463, 230 S.E.2d 159 (1976)] at 468, 230 S.E.2d at 163. In other words, when there is a dispute as to a material fact regarding when the plaintiff should have discovered the fraud, summary judgment is inappropriate, and it is for the jury to decide if the plaintiff should have discovered the fraud. Failure to exercise due diligence may be determined as a matter of law, however, where it is "clear that there was both capacity and opportunity to discover the mistake." *Id.*

*Id*. at 708–09, 551 S.E.2d at 485 (emphasis added).

Woomer failed to carry its burden of establishing when, in fact, Stock discovered those errors. In fact, Woomer itself remains unable to point to the date on which it discovered what it now admits to be the first of its errors in procuring this coverage. SOF, Ex. A at 74:5-11. Moreover, the statute of limitations does not begin to run until Stock "suffers harm because of" those errors. Stock has not and will not suffer any such harm unless and until Underwriters is declared to have no defense obligation under the policies as a matter of law. In other words, Stock could file this action three years from today and the action would still not be time barred because, to date, Stock has still not technically suffered harm as a result of Woomer's conduct.

### C. Woomer's Conclusory Pronouncement That Woomer "Did Not Misrepresent Anything, Act Unfairly or Deceptively, or Breach Any Duty" is Insufficient to Carry its Summary Judgment Burden.

Woomer opens this section of its moving brief by considering the possibility that "the issuance of the certificates of insurance proximately caused Stock's damages" and is not time barred. (D.E. 123 at 9–10.) This statement alone acknowledges the fact issues abound.

Woomer's assertion that, even assuming this to be true, Woomer "did not misrepresent anything, act unfairly or deceptively, or breach any duty to Stock" is as inadmissible as it is insufficient to eliminate all disputed fact issues. Woomer readily admits that it breached duties to Stock.

"[I]t is well established in this State that if an insurance agent or broker undertakes to procure for another insurance against a designated risk, the law imposes upon him the duty to use reasonable skill, care and diligence to procure such insurance and holds him liable to the proposed insured for loss proximately caused by his negligent failure to do so." *White v. Consol. Planning, Inc.*, 166 N.C. App. 283, 301, 603 S.E.2d 147, 160 (2004) (quoting *Kaperonis v. Underwriters at Lloyd's, London*, 25 N.C. App. 119, 128, 212 S.E.2d 532, 538 (1975)).

This is not a case involving a broker that allegedly "failed to inform an insured of all aspects of the insurance policy" as Woomer asserts.[6] (D.E. 123 at 10.) This case involves an explicit admission by Woomer that it had a duty to procure additional insured coverage for Stock under Garcia's 2007 Policy but failed to do so because of "human error." SOF, Ex. A at 81:6-10. Woomer then admits committing further error and breach of its own protocols when it acknowledges not reviewing the 2007 Policy upon receipt from Underwriters. SOF, Ex. A at 78:15-80:15. Similarly, there is no allegation that Woomer failed to explain the terms and conditions of the 2008 and 2009 Policies. Woomer's liability is based on the failure to procure the coverage that Garcia required under his contract with Stock. SOF, Ex. B. Despite Woomer's

---

[6] Thus, the case law on which Woomer relies is plainly inapplicable. *Id*. (citing *Cobb v. Pa. Life Ins. Co.*, 215 N.C. App. 268, 275, 715 S.E.2d 541, 548 (2011) (involving whether a broker was obligated to "explain the definition of 'totally disabled'"); *Phillips by Phillips v. State Farm Mut. Auto. Ins. Co.*, 129 N.C. App. 111, 497 S.E.2d 325 (1998) (involving whether broker was obligated to explain eligibility for UIM coverage if he purchased more than the statutory minimum limits); *Greenway v. N.C. Farm Bureau Mut. Ins. Co.*, 35 N.C. App. 308, 314, 241 S.E.2d 339, 343 (1978) (involving a purported duty to "explain the meaning and effect of all the provisions in the policy")).

protestations to the contrary, Woomer must have seen that contract because the certificates of insurance it prepared mirror the pertinent contract language.

Woomer's next assertion that "Stock had a duty to read the Policies" rings hollow. (D.E. 23 at 11.) First, Stock is not Woomer's client. SOF, Ex. A at 63:17-19. Second, there is no evidence that any of the subject policies were delivered by Woomer to Garcia, let alone, to Stock. Third, Woomer testified that Stock and/or Garcia should have and could have relied on the certificates of insurance it delivered to Garcia. *Id*. at 72:21-73:1. Those certificates for all three of the subject policies purportedly confirmed that Stock was an additional insured and had completed operations coverage.[7]

---

[7] The authority on which Woomer relies is plainly distinguishable. (D.E. 123 at 11.) The dissent in *Baggett v. Summerlin Ins. & Realty, Inc.*, 143 N.C. App. 43, 53, 545 S.E.2d 462, 469 (2001), discusses the relationship between an insured and its agent. Woomer has no contractual or agency relationship whatsoever with Stock. The court also noted that the general rule adopted by Woomer only applies "where no trick or device had prevented a person from reading the paper which he has signed or has accepted as the contract[.]" *Id*. (citation omitted). So too in *Greenway*, the court held that the endorsement at issue was referred to on the face of the policy and that an insured is not excused from its terms by not reading them. 35 N.C. App. at 314, 241 S.E.2d at 343. As noted, there is no evidence that Woomer delivered anything other than the certificates of insurance (which Woomer itself testified could be relied upon by Stock and Garcia), all of which showed Stock being an additional insured with completed operations coverage. Finally, Woomer's reliance on N.C. Gen. Stat. 58-3-150(e) (2019) does not support its position. "Our legislature has prohibited the issuance of COIs that "contain[ ] any false or misleading information concerning the policy of insurance to which the certificate of insurance makes reference." N.C. Gen. Stat. § 58-3-150(f)(2) (2019). We simply hold that a COI, sent to a third party and never communicated to the insured, without any additional consideration, does not create additional contractual duties owed to the insured." *D C Custom Freight, LLC v. Tammy A. Ross & Assocs., Inc.*, No. COA 19-1059, 2020 WL 5159972, at *4 (N.C. Ct. App. Sept. 1, 2020). The certificates issued by Woomer are admittedly "false or misleading."

## CONCLUSION

For the foregoing reasons, Stock respectfully requests that the Court deny Woomer's motion for summary judgment.

Respectfully submitted, this the 26th day of October, 2020.

**ELLIS & WINTERS LLP**

/s/ Thomas H. Segars
Thomas H. Segars (N.C. Bar No. 29433)
P.O. Box 33550
Raleigh, NC 27636
Telephone: (919) 865-7000
Facsimile: (919) 865-7010
E-mail: tom.segars@elliswinters.com

**PASICH LLP**

Jeffrey L. Schulman (N.Y. Bar No. 3903697)
*Counsel Making Special Appearance Pursuant to Local Civil Rule 83.1(e)*
757 Third Avenue, 20th Floor
New York, New York 10017
Telephone: (212) 686-5000
Facsimile: (424) 313-7890
E-mail: jschulman@pasichllp.com

*Counsel for Stock Building Supply, LLC n/k/a BMC East, LLC*

# **CERTIFICATE OF SERVICE**

I hereby certify that on October 26, 2020, I electronically filed the foregoing with the Clerk of Court for the United States District Court for the Eastern District of North Carolina, which will automatically serve the following parties:

>Kevin M. O'Brien
>Robert M. Kennedy, Jr.
>Phelps Dunbar LLP
>4140 Parklake Avenue, Suite 100
>Raleigh, North Carolina 27612
>
>Neal R. Novak
>Karen J. Andersen Moran
>Novak Law Offices
>33 N. LaSalle, Suite 1900
>Chicago, IL 60602
>
>*Counsel for Plaintiff Certain Underwriters at Lloyd's, London, Subscribing to Policy Nos. TCNR001338, TCNR005665 and TCNR012269*
>
>John T. Jeffries
>Jeffrey B. Kuykendal
>McAngus, Goudelock & Courie, P.L.L.C.
>P. O. Box 60307
>6302 Fairview Road, Suite 700
>Charlotte, NC 28210-2267
>
>*Counsel for Third-Party Defendant Woomer Insurance Group, Inc.*

>/s/ Thomas H. Segars
>Thomas H. Segars (N.C. Bar No. 29433)
>
>*Counsel for Stock Building Supply, LLC n/k/a BMC East, LLC*