IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:14-CV-367-BO

| | |
|---|---|
| CERTAIN UNDERWRITERS AT LLOYD'S, LONDON subscribing to POLICY NOS. TCNR001338, TCNR005665 and TCNR012269, | )<br>)<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )     <u>ORDER</u> |
| STOCK BUILDING SUPPLY, LLC n/k/a BMC EAST, LLC, | )<br>)<br>) |
| Defendant. | )<br>) |
| and | )<br>) |
| STOCK BUILDING SUPPLY, LLC. | )<br>) |
| Third-Party Plaintiff, | )<br>) |
| v. | )<br>) |
| WOOMER INSURANCE GROUP, INC, | )<br>) |
| Third-Party Defendant. | ) |

This matter is before the Court on two motions for summary judgment. The first [DE 124] was filed by plaintiff Certain Underwriters at Lloyd's, London ("Underwriters" or "plaintiff") and the second [DE 122] by third-party defendant Woomer Insurance Group, Inc. ("Woomer Insurance"). The appropriate responses and replies have been filed and a hearing was held before the undersigned on March 17, 2021, at Elizabeth City, North Carolina. In this posture, the motions are ripe for ruling.

## PROCEDURAL HISTORY

Plaintiff commenced this action on June 24, 2014 by filing a complaint [DE 1] against Carlos O. Garcia and CNNC (hereinafter collectively referred to as "Garcia"), Stock Building Supply, LLC ("Stock"), and New Bern Riverfront Development, LLC ("New Bern Riverfront"). Plaintiff filed an amended complaint [DE 75] on February 6, 2018, against sole remaining defendant Stock. Plaintiff seeks the following declarations: that it has no duty to defend or indemnify Stock under the relevant policies because Stock is not a named insured; that Stock does not qualify as an insured or additional insured for coverage; that there are no allegations in the Underlying Action seeking damages to which the relevant policies apply; that the Underlying Action does not allege property damage caused by an occurrence within the meaning of the policies and thus the policies are not triggered; that there is no allegation of property damage during the relevant policy periods; and that the relevant policies do not provide contractual liability coverage. *Id.*

Stock answered the complaint and asserted a counterclaim against Underwriters and a third-party complaint [DE 10] against Woomer Insurance, which it later amended. [DE 16; 84]. In its second amended counterclaim, Stock alleges that it is entitled to recover from Underwriters the costs to defend in the Underlying Action because it was a third-party beneficiary under the relevant policies; that it is entitled to a declaration that Underwriters owe a duty to defend Stock in connection with the Underlying Action; that Underwriters has a duty to indemnify Stock in the Underlying Action; that Underwriters engaged in unfair and deceptive trade practices; and finally for reformation of the contract. [DE 84]. In its amended third-party complaint against Woomer, Stock alleges claims for negligent misrepresentation, unfair and deceptive trade practices, and negligence under North Carolina law. [DE 16].

Underwriters and Woomer moved to dismiss Stock's claims against them. By order entered August 12, 2020, the Court[1] denied Woomer's motion to dismiss and granted in part and denied in part Underwriters' motion to dismiss. Specifically, the Court dismissed Stock's unfair and deceptive trade practices and reformation counterclaims. The Court also dismissed Stock's counterclaim seeking a declaration that Underwriters have a duty to indemnify Stock as the final decree in the Underlying Action had been issued and all rulings had been in Stock's favor. The Court declined to dismiss as duplicative Stock's claim seeking a declaration of a duty to defend. [DE 117].

On October 5, 2020, Underwriters filed a motion [DE 124] for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. On the same day, third-party defendant Woomer Insurance, as an agent of Underwriters, claimed no breach of duty or responsibility for Stock's alleged damages, and also moved for summary judgment [DE 122] pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## FACTUAL BACKGROUND

This matter involves alleged construction defects at a New Bern, North Carolina condominium development commonly referred to as SkySail Luxury Condominiums ("SkySail"). New Bern Riverfront, as the developer of the project, retained Weaver Cooke Construction, LLC ("Weaver Cooke") as the general contractor to coordinate construction of the condominiums. Weaver Cooke subcontracted the installation of windows and sliding glass doors to Stock, who further subcontracted the installation to Garcia. The Underlying Action referenced throughout involves New Bern Riverfront's suit against Weaver Cooke for numerous deficiencies in the condominium's construction, including faulty windows and doors, all of which culminated in

---

[1] This action proceeded before Senior United States District Judge Malcolm J. Howard prior to its reassignment to the undersigned on January 20, 2021.

Weaver Cooke's complaints against Stock, Stock's third-party complaints against Garcia, and ultimately, the present motions for summary judgment.

Stock maintains that the condominium project's functional and structural problems were due to the work of the subcontracted party, Garcia, and accordingly pursued coverage and indemnity as an additional named party on Garcia's insurance policy with Underwriters. The following facts are undisputed. [DE 132].

Between 2007 and 2009, Underwriters issued three Commercial General Liability Policies to Garcia: (1) Policy No. TCNR001338, effective from January 26, 2007 to January 26, 2008 ("the 2007 Policy"), (2) Policy No. TCNR005665, effective from January 26, 2008 to January 2009 ("the 2008 Policy"), and (3) Policy No. TCNR012269, valid from May 14, 2009 to July 30, 2009, when it was effectively cancelled. *Id.* ¶ 3. Neither plaintiff nor defendant disputes the language of these policies, which include a provision specifically stating that only the individual or organization specified under Section II will be "insured." *Id.* ¶ 4. Nor do the parties dispute the Coverage Form's language specifying that Underwriters "[have] no duty to defend the insured against any 'suit'…to which this insurance does not apply." *Id.* ¶ 5. Both parties concede Section II states that when a policy is issued to an "individual," that individual and their spouse will be insured, "but only with respect to the conduct of business of which [they] are the sole owner." *Id.* ¶ 7.

Stock entered an agreement with Garcia calling for installation of glass doors and windows at the project site in March of 2007 and the contract between the two parties included the requirement that Stock be named as an additionally insured entity under Garcia's policy with Underwriters. [DE 84 at 3]. Garcia's 2008 and 2009 policies contained an endorsement naming Stock and its affiliated subsidiaries as an additional insured party, however the nature of the

4

coverage was modified to include insurance "only with respect to liability for 'bodily injury', 'property damage' or 'personal and advertising injury'" that might occur during construction and as a result of the primary insured party's actions. [DE 132 ¶ 8]. Once the actual construction at the project site was completed, the policies' coverage for bodily injury and property damage ceased to exist for the additional insured party. *Id.*.

On May 6, 2010, New Bern Riverfront filed a first amended complaint against Weaver Cooke and others in the United States Bankruptcy Court for the Eastern District of North Carolina, No. 09-10340-8-JRL. *Id.* ¶ 9. On June 14, 2012, Weaver Cooke filed a second third-party complaint naming Stock, among others, as third-party defendants. *Id.* ¶ 13. In response to the general contractor's third-party complaint for this alleged "property damage," Stock filed its own third-party complaint against Garcia in the Underlying Action in January 2013, alleging equitable indemnity, contractual indemnity, and negligence. *Id.* ¶ 15. All rulings in the Underlying Action ultimately were in Stock's favor and Stock is no longer seeking indemnity from Underwriters based upon the outcome of the underlying action. *Id.* ¶ 17. Underwriters now seek a declaration that it has no duty under the relevant policies to defend Stock in the Underlying Action. Stock contends that Underwriters does have a duty to reimburse Stock's defense costs.

As discussed above, Stock, in response to Underwriter's request for declaratory judgment and denial of coverage, filed counterclaims against Underwriters and a third-party complaint against Woomer Insurance. As to Stock's claims against Woomer, the following facts are not in dispute.[2] [DE 134]. Under its contract with Stock, Garcia was contractually obligated to obtain comprehensive general liability insurance which would show that Stock and its affiliates were

---

[2] Although Woomer failed to file a statement of material facts pursuant to Local Civil Rule 56.1, Stock filed its own statement to which Woomer has responded.

5

additional insureds and that the policy would include both contractual liability and completed operations liability. *Id.* ¶ 1. Such a requirement is standard in this context. *Id.* ¶ 2. For the 2007 Policy, Woomer believed that it had procured additional insured coverage for Stock, but due to human error it failed to notify the proper party that Stock needed to be added to the policy. *Id.* ¶ 3. Woomer did secure Stock's additional insured status under the 2008 and 2009 Policies. *Id.* ¶ 4.

## DISCUSSION

A motion for summary judgment may not be granted unless there are no genuine issues of material fact for trial and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986). In determining whether a genuine issue of material fact exists for trial, a trial court views the evidence and the inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

The parties contend, and the Court agrees, that North Carolina law applies to the insurance contracts at issue in this case. Under North Carolina law, the meaning of the language used in an insurance contract is a question of law. *Guyther v. Nationwide Mut. Fire Ins. Co.*, 109 N.C. App. 506, 512 (1993). "Where no definition for a term is contained in the policy, unambiguous terms will be given the meaning afforded them in ordinary speech unless the context indicates that another meaning was intended." *Id.* Any ambiguity in the terms of the policy is construed against the insurer. *Harleysville Mut. Ins. Co. v. Buzz Off Insect Shield, L.L.C.*, 364 N.C. 1, 9 (2010). A policy provision is ambiguous if the court finds it to be "fairly and reasonably susceptible to

6

multiple constructions[.]" *Id.* at 10. If possible, all clauses of an insurance policy are to be construed together. *Id.* at 9. It is the insured's burden to show that its claim fits within the policy. *Hobson Const. Co. v. Great Am. Ins. Co.*, 71 N.C. App. 586, 590 (1984). North Carolina "courts construe coverage clauses broadly and exclusionary clauses narrowly." *Jackson Farming Co. of Autryville v. FCCI Servs., Inc.*, 481 F. Supp. 3d 543, 549 (E.D.N.C. 2020).

Importantly, the duty to defend against an action is broader than an insurer's duty to pay damages. *Waste Mgmt. of Carolinas, Inc. v. Peerless Ins. Co.*, 315 N.C. 688, 691 (1986). In determining whether an insurer has a duty to defend in an action against the insured, a court compares the policy and the pleadings in the underlying action side-by-side, and any doubts must be "resolved in favor of the insured." *Id.* Only if the facts are "not even arguably covered by the policy" does the insurer have no duty to defend. *Id.* at 692. However, if the pleadings "disclose a mere possibility that the insured is liable[,]" or the allegation of facts constituting both covered and excluded events, the duty to defend is triggered. *Id.* at 691 n.2; *see also Cont'l Cas. Co. v. Amerisure Ins. Co.*, 886 F.3d 366, 371 (4th Cir. 2018).

I.  Underwriters' motion for summary judgment.

Underwriters argue that they are entitled to summary judgment on their amended complaint and Count I of Stock's second amended counterclaim because Stock does not qualify for coverage as an additionally insured party for four reasons: (1) the 2007 Policy contained no such endorsement, (2) the 2008 and 2009 Policies failed to designate New Bern, North Carolina as the location, (3) the Underlying Action does not concern "property damage" caused by a specific occurrence, and (4) any damage to the property that may have occurred was not a result of Garcia's ongoing operations for Stock. [DE 124]. Underwriters further contend they are entitled to summary

7

judgment in their favor on Count II of Stock's amended counterclaim because North Carolina law does not require an insurer to defend an entity under third-party beneficiary principles.

   A.   Whether Stock is an additional insured.

Stock was listed as an additional insured under the 2008 and 2009 Policies, but Woomer has admitted that it failed to procure Stock's coverage under the 2007 policy. [DE 128 at 5]. Accordingly, the Court determines that Stock was not an additional insured under the 2007 Policy.

Underwriters next contend that the 2008 and 2009 Policies do not list the SkySail project as a designated location, and thus Stock is not properly included as an additional insured under either the 2008 or 2009 Policies. The endorsement at issue includes a box in which the name of the additional insured person or organization is requested. [DE 126-2 at 53]; [DE 126-3 at 48]. Both the 2008 and 2009 Policies include Stock in this provision, with an insurance compliance location of P.O. Box 12010-CA, Hemet, CA. *Id.*

Underwriters relies on the following language in the additional insured endorsement to preclude Stock from being an additional insured:

> A. Section II - Who Is An Insured is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused in whole or in part, by:
> 1. Your acts or omissions; or
> 2. The acts or omissions of those acting on your behalf;
> in the performance of your ongoing operations for the additional insured(s) **at the location(s) designated above.**

*Id.* Underwriters argue that the location listed above is a Hemet, CA address, not the location of the SkySail project in New Bern North Carolina, and thus that Stock cannot be covered under this policy for any work at the SkySail project.

The Court agrees with Stock that to apply Underwriters' construction of the endorsement would be to, in essence, find an illusory contract. The endorsement never expressly asks for the

8

location of a project, it merely asks for the name of the additional insured or organization. That an insurance compliance address for Stock was listed does not change that fact, nor should it result in Underwriters being granted a construction of the endorsement which would cause the endorsement to fail. If not illusory, the phrase is ambiguous in light of the remainder of the endorsement page. Indeed, an ambiguity can exist even where, as here, the words themselves are clear ("at the location(s) designated above"), but the facts of the case create more than one reasonable interpretation. *Reg. v. White*, 358 N.C. 691, 695 (2004). Because the insurance company or its representative was responsible for drafting this endorsement, any ambiguity must be construed against it. *Hunter v. Town of Mocksville, N. Carolina*, 897 F.3d 538, 548 (4th Cir. 2018).

Accordingly, the Court concludes that the failure to designate a covered location, in light of the failure of the endorsement to include a space for doing so, does not bar Stock from being an additional insured on the 2008 and 2009 Policies.

B. Comparison of the Policies and the pleadings.

Having determined that Stock is an additional insured, the Court next compares the Policies to the pleadings. In the 2008 and 2009 Policies, Underwriters are obligated to defend the insured against any suit seeking damages, including property damage. Property damage is defined as "[p]hysical injury to tangible property, including all resulting use of that property." [DE 126-2] 2008 Policy § V (Definitions); [DE 126-3] 2009 Policy § V (Definitions). Property damage must also be caused by an occurrence, which is defined in the 2008 and 2009 Policies as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* The alleged property damage must also occur during the policy period. *Id.* § I (coverages). Finally, a "Suit" is defined by the polices to include a "civil proceeding in which damages because of ... 'property damage' ... are alleged." *Id.* § V (Definitions).

9

In the Underlying Action, New Bern Riverfront alleged that Weaver Cooke "fail[ed] to properly construct the Project buildings in a manner preventing water intrusion, which is causing damage and the potential for significant mold problems in the residential units as well as the common areas." [DE 126-7] New Bern Riverfront First Amended Complaint (NBR FAC) ¶ 150(l). New Bern Riverfront sought damages for, among other things, "damage caused to . . . other property resulting from deficiencies in the performance and work of Defendant Weaver Cooke." *Id.* § 154(e).

In Weaver Cooke's Second Third-Party complaint, naming Stock and others as defendants, Weaver Cooke alleged that the defendants, including Stock, were liable for "the claims being asserted against [Weaver Cooke] aris[ing] out of the transaction or occurrence that is the subject matter of the original action" [DE 126-9] Weaver Cooke's Second Third-Party Complaint (WC TPC) ¶ 11. Weaver Cooke alleged that New Bern Riverfront had alleged that "work performed by Weaver Cooke in connection with the project, through such Third-Party Defendants [including Stock] was defective or otherwise not in conformance with the requirements of the Construction Contract, and [further] alleg[ed] that Weaver Cooke is responsible for the cost of repairing or replacing such work, and other damages as an alleged consequence thereof." *Id.* ¶ 22.

Weaver Cooke alleged that "[a]t least some portions of the alleged . . . deficiencies and nonconformities relate to the work, design, labor performed and/or materials supplied by [Stock] in connection with [its] subcontract; and relate to injury or damage to property other than that of [Stock], and to property other than property which is the subject of their Subcontract." *Id.* ¶ 23. Weaver Cooke alleged that Stock acted negligently in failing to exercise reasonable care and failing to comply with the applicable standard of case for its design, labor, and materials supplied in connection to the SkySail project. *Id.* ¶ 26.

10

Underwriters contend first that the Underlying Action does not allege "property damage" caused by an "occurrence" and second that any "property damage" that may have occurred was not caused by Garcia's acts or omissions in the performance of its ongoing operations for Stock. The Court determines that both arguments fail.

As discussed above, the Policies define property damage as "physical damage to tangible property" and an occurrence as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The parties appear agree that under North Carolina law, property damage does not include the cost to repair defective workmanship or complete a project that was done incorrectly. *Prod. Sys., Inc. v. Amerisure Ins. Co.*, 167 N.C. App. 601, 607 (2004).[3] However, the complaint in the Underlying Action plainly alleges damage to other property caused by the water intrusion into residential units and common areas.[4] There is no suggestion that the windows and doors installed by Garcia were not present in either residential units or common areas.

New Bern Riverfront's allegations describe water intrusion as causing both damage and the potential for mold problems in the residential units and common areas. NBR FAC ¶ 150. Weaver Cooke then alleges that Stock is liable for these damages. *See* WC TPC ¶ 22. Accordingly, in Weaver Cooke's complaint against Stock, both shoddy workmanship and consequential damages are alleged. This is sufficient to trigger Underwriters' duty to defend. *Waste Mgmt.*, 315 N.C. at 691 n.2. Additionally, contrary to Underwriters' argument, Stock having been named along

---

[3] Stock urges the Court to rely only on the insurance contract's definition of property damage.

[4] Although the Catalogue of Issues attached to New Bern Riverfront's Supplemental complaint does not describe what damage has been caused by water intrusion into the windows and doors of the residential unit, this list of issues is not dispositive of whether Underwriters have a duty to defend. *See* [DE 125 at 14]. The pleading itself references damage caused by water to the residential units and the common areas. This is sufficient to trigger a duty to defend for property damage.

11

with a number of other defendants in Weaver Cooke's third-party complaint is immaterial – all that is required is that Stock could have been deemed liable for the damages alleged by Weaver Cooke in order to trigger Underwriters' duty to defend. *See Harleysville Mut. Ins. Co. v. Hartford Cas. Ins. Co.*, 90 F. Supp. 3d 526, 539 (E.D.N.C. 2015).

Finally, Underwriters contend that, as a matter of law, Stock is not entitled to a defense under the 2008 and 2009 policies because any purported property damage was not caused in whole or in part by Garcia's acts or omissions in performance of ongoing operations for Stock. In other words, the policies limit the availability of additional insured coverage to those instances where the property damage is caused in whole or in part by Garcia's acts or omissions in the performance of ongoing operations, not after the work is complete. Underwriters cite evidence that Garcia's work was completed in April 2008. [DE 126-13]. However, New Bern Riverfront's complaint is silent as to when any water intrusion causing damage occurred. *See* [126-7] NBR FAC. Nor is there any indication of when water intrusion causing damage occurred in Weaver Cooke's complaint against Stock. [DE 126-9] WC TPC.

The Court has considered Underwriters' reliance on *Harleysville*, cited above, which determined that where property damage alleged in an underlying action has no date certain, insurers whose policies were in effect between the date the project was completed and the date of the lawsuit would be required to defend. 90 F. Supp. 3d. at 548. However, the Court is not persuaded that such a rule applies in this case, foremost because *Harleysville* concerned and applied a multiple trigger of coverage test, which is not at issue here. Rather, the Court is persuaded by broader principles discussed above, which hold that, unless the facts alleged in the underlying action are not even arguably covered, the insurer has a duty to defend. *Waste Mgmt.*, 315 N.C. at 692; *see also Travelers Indem. Co. v. Miller Bldg. Corp.*, 97 F. App'x 431, 434 (4th Cir. 2004)

12

(allowing the insured "the benefit of any doubt or ambiguity" arising from claims in underlying action). Based upon the pleadings in the Underlying Action, and the parties' admission that Garcia was working on the SkySail project at minimum in April 2008, the Court determines that there is a mere possibility that Stock would be liable for property damage alleged in the Underlying Action, and Underwriters therefore have a duty to defend.

In summary, in light of the broad duty of an insurer to defend, the Court determines that judgment against Underwriters and in favor of Stock on the duty to defend is appropriate. Because the Court has determined that Underwriters are obligated to defend Stock, it declines to consider whether Stock would alternatively be entitled to a defense under a third-party beneficiary theory.

II.     Woomer's motion for summary judgment.

Woomer contends, and Stock does not appear to disagree, that a decision by the Court that Underwriters have a duty to defend Stock would entitle Woomer to summary judgment in its favor. *See* [DE 133 at 3]; [DE 128 at 10]. In light of the parties' positions and the Court's holding as to the obligation of Underwriters, the Court will hold its ruling on Woomer's summary judgment motion in abeyance for a brief period to allow Stock to more fully state its position as to the necessity of adjudicating the motion on its third-party claims against Woomer.

## CONCLUSION

Accordingly, for the foregoing reasons, Underwriters' motion for summary judgment [DE 124] is DENIED. Defendant Stock is entitled to a judgment in its favor that Underwriters have a duty to defend Stock in the Underlying Action.

Woomer's motion for summary judgment [DE 122] is HELD IN ABEYANCE for a period of fourteen (14) days from the date of entry of this order. During that time, Stock shall clearly state its position on whether Woomer is entitled to summary judgment in its favor in light of the Court's

13

decision on Underwriters' duty to defend, or otherwise resolve its third-party claims against Woomer.

SO ORDERED this __24__ day of August, 2021.

                                                         */s/ Terrence W. Boyle*
                                                        TERRENCE W. BOYLE
                                                        UNITED STATES DISTRICT JUDGE